# 2009 DTA 81

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL II**

DEPARTAMENTO DE TRANSPORTACIÓN Y OBRAS PÚBLICAS
Querellada-Recurrente

v.

SERVIDORES PÚBLICOS UNIDOS DE PUERTO RICO
Querellante-Recurrida

COMISIÓN DE RELACIONES DEL TRABAJO DEL SERVICIO PÚBLICO
Agencia

Núm. KLAN-2008-01832

San Juan, Puerto Rico, a 19 de mayo de 2009

Panel integrado por su Presidenta, la Juez García García,
la Juez Varona Méndez y el Juez Cábán García

Varona Méndez, Jueza Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

Se nos solicita que revisemos una sentencia dictada por el Tribunal de Primera Instancia, Sala de San Juan, en la que se abstuvo de atender una petición de revisión de un laudo de arbitraje emitido por la Comisión de Relaciones del Trabajo del Servicio Público. En dicho laudo, el árbitro determinó que la medida disciplinaria impuesta por parte del Departamento de Transportación y Obras Públicas (DTOP) a la recurrida, Sra. Mary L. Morales Ramos, no procedía. En virtud del laudo, además, se ordenó al DTOP eliminar del expediente de personal de la recurrida todo documento relacionado con la suspensión de empleo y sueldo relacionado a la suspensión y que se le pagara a la recurrida todo salario dejado de devengar en virtud de la medida disciplinaria impuesta.

Inconforme con el laudo emitido, el DTOP presentó ante el Tribunal de Primera Instancia una Solicitud de Revisión de Laudo que fue denegada. Posteriormente, el DTOP presentó ante este Tribunal un recurso titulado apelación que acogemos como *certiorari* a tenor con el inciso (D) de la Regla 32 del Reglamento del Tribunal de Apelaciones. 4 L.P.R.A. Ap. XXII-B, R. 32 (D). Por los fundamentos que discutiremos a continuación, se expide el auto de *certiorari* solicitado y se confirma la sentencia recurrida.

## I

La recurrida trabaja para el DTOP desde el 16 de junio de 1999 y ocupa el puesto de Auxiliar Fiscal II en la Oficina Regional de Humacao. El 1 de febrero de 2006, la Sra. Michelle Pérez Hernández, supervisora del área de finanzas, amonestó verbalmente a la recurrida. En dicha amonestación, la Sra. Pérez Hernández exhortó a la recurrida a mejorar su conducta y a no cuestionar los deberes que se le delegaban. El 16 de mayo de 2006, la Sra. Pérez Hernández amonestó verbalmente y por escrito a la recurrida, por alegadamente haber violado varios incisos del Reglamento de Normas de Conducta y Medidas Disciplinarias de la Agencia. Entre dichas violaciones imputadas se encuentra la insubordinación, ausencias sin notificar y llegar tarde de su hora de almuerzo.

El 13 de diciembre de 2006, el Sr. Luis A. Madera Echevarría, Director de la División de Quejas y Agravios de la Unión de Servidores Públicos Unidos (Unión), envió una carta dirigida al Sr. Moisés Rivera O'Neill, Director de la Oficina de Relaciones Industriales de la Agencia, solicitando una vista administrativa informal relacionada a la intención de suspensión de empleo y sueldo entregada a la recurrida. La DTOP notificó a la recurrida la fecha en que se celebraría la vista administrativa.

Luego de celebrada la vista administrativa, el Oficial Examinador redactó el Informe de Vista Administrativa Informal, en el que recomendó la suspensión de la recurrida de empleo y sueldo por 10 días laborables. El 1 de febrero de 2007, el Director de la Oficina de Relaciones Industriales de la Agencia notificó a la Directora de Recursos Humanos sobre la suspensión de empleo y sueldo por 10 días laborables impuesta a la recurrida.

La Unión presentó una Solicitud de Arbitraje ante la Comisión de Relaciones del Trabajo del Servicio Público (Comisión), por lo que dicho cuerpo procedió a emitir la Notificación de Solicitud de Servicios de Arbitraje de Quejas y Agravios señalando la vista en su fondo para el 5 de noviembre de 2007. En la celebración de la vista administrativa las partes tuvieron la oportunidad de presentar toda la evidencia que entendieran pertinente. Una vez culminada la audiencia, las partes presentaron sus respectivos alegatos en apoyo su posición y el caso quedó sometido.

Las partes sometieron el siguiente acuerdo de sumisión:

"1) Que el árbitro determine si la medida disciplinaria impuesta por el DTOP, suspensión de empleo y sueldo de 10 días a la recurrida, se hizo conforme al Convenio Colectivo, el Reglamento de Normas de Conducta y el

derecho aplicable. De determinar que se hizo correctamente, que se desestime la misma.

2) Del árbitro determinar que la medida disciplinaria impuesta no es proporcional, emita lo que en derecho proceda."

El árbitro dictó laudo, en el que determinó que la medida disciplinaria impuesta a la recurrida no estuvo justificada, ordenando que se eliminara todo documento relacionada a dicha suspensión de su expediente personal así como que se le pague toda remuneración no devengada en virtud de la suspensión de empleo y sueldo.

Inconforme con el dictamen del árbitro, el 25 de enero de 2008, el DTOP presentó ante el Tribunal de Primera Instancia una Petición de Revisión del Laudo de Arbitraje en la que sostuvo que el árbitro erró al determinar que la suspensión de empleo y sueldo por 10 días no estaba justificada y al determinar que no acatar órdenes no constituye insubordinación. El Tribunal de Primera Instancia emitió Orden para que la Unión replicara el escrito de la DTOP. Así las cosas, la Unión presentó su escrito de oposición a petición de revisión en el que expresó que el laudo fue dictado conforme a derecho luego que el árbitro ponderara y aquilatara la prueba presentada, por lo debía mantenerse en vigor.

Luego de varios trámites procesales, el Tribunal de Primera Instancia emitió sentencia en la que determinó que en virtud de la norma de autorrestricción, no era prudente revisar el contenido del laudo. Inconforme con las determinaciones del Tribunal de Primera Instancia, el DTOP recurre ante este Tribunal y expresa que erró el foro de primera instancia:

"1) al aplicar de forma incorrecta la norma de deferencia a los foros administrativos;

2) al confirmar la medida disciplinaria impuesta a la querellante no estuvo justificada;

3) al determinar que el no acatar órdenes no constituye insubordinación."

Con el beneficio de la comparecencia de la recurrida mediante su escrito en oposición a *certiorari* y el derecho aplicable, resolvemos.

## II

La Ley Núm. 45 del 25 de febrero de 1998, según enmendada, 3 L.P.R.A. § 1451 *et seq.* (Ley Núm. 45) le confirió a los empleados públicos no cubiertos por la Ley de Relaciones del Trabajo, Ley Núm. 130 del 8 de mayo de 1945, 29 L.P.R.A. Secc. 69 *et seq.*, el derecho a la sindicación. Es una ley de aplicabilidad general a las agencias de la Rama Ejecutiva, que con limitadas excepciones, autoriza la organización sindical y la negociación colectiva entre los parámetros establecidos en la ley, los cuales se circunscriben a: 1) acomodar, dentro de las realidades fiscales en que se desenvuelve el Gobierno, el costo correspondiente al mejoramiento de las condiciones de trabajo de los empleados públicos; 2) evitar interrupciones en los servicios que prestan las agencias gubernamentales; y 3) promover la productividad en el servicio público. Exposición de motivos de la Ley Núm. 45, *supra*, pág. 148. *Federación v. Molina,* 160 D.P.R. 571 (2003).

El caso ante este fóro requiere la revisión de un laudo emitido por un árbitro designado por la Comisión, que es el organismo creado por la Ley Núm. 45 para hacer cumplir sus disposiciones y al cual se le confirieron poderes y facultades investigativas, cuasi-legislativas y cuasi-judiciales. *Asociación Maestros v. Comisión,* 159 D.P.R. 81 (2003). Véase además Art. 11 de la Ley Núm. 45 de 25 de febrero de 1998, incisos b, c, d. 3 L.P.R.A. § 1452(t) (incisos b, c, d).

Bajo la doctrina de delegación de poderes, el organismo administrativo goza de las funciones que se le han

94

encomendado legislativamente y aquéllas que surgen de su actividad o encomienda primordial. Las actuaciones administrativas deben ajustarse al poder delegado, y en ausencia de un mandato legislativo expreso o implícito, aquella actuación administrativa que no obedezca el poder conferido sería una actuación *ultra vires* de la agencia, por ende, nula. *Caribe Comms, Inc. v. P.R.T.C.O.,* 157 D.P.R. 203 (2002).

Conforme con nuestro estado de derecho, las agencias administrativas sólo tienen los poderes otorgados expresamente por su ley habilitadora y aquellos que sean indispensables para llevar a cabo los conferidos. *Raimundi v. Productora,* 162 D.P.R. 215 (2004).

La Ley Núm. 45, *supra,* le concedió a la Comisión ciertos poderes, entre los cuales se encuentran los siguientes:

"§ 1452t. Poderes, deberes, responsabilidades, facultades y funciones de la Comisión de Relaciones del Trabajo del Servicio Público.

...

(g) Conceder los remedios y emitir órdenes que sean necesarias y convenientes para cumplir con los propósitos de esta Ley. Esto incluye, entre otras, órdenes provisionales o permanentes de cesar y desistir; órdenes para la reposición de empleados suspendidos o destituidos, con o sin el abono de la paga atrasada dejada de percibir y la concesión de todos los beneficios marginales a que los empleados hubiesen tenido derecho durante el período de suspensión o destitución; y órdenes imponiendo sanciones a agencias, organizaciones sindicales o representantes exclusivos, incluyendo la descertificación de estos últimos.

...

(j) Designar un panel de conciliadores y de árbitros que tendrán a su cargo todo lo relativo a la atención de controversias sobre aplicación de los convenios colectivos y cuando surjan estancamientos en los procesos de negociación de los convenios.

...

(l) Nombrar oficiales examinadores quienes podrán realizar investigaciones, presidir audiencias y llevar a cabo cualquier otra tarea que la Comisión le asigne.

(r) La Comisión tendrá, además, amplia facultad para interponer cualesquiera remedios legales que sean necesarios para hacer efectivos los propósitos de esta Ley y hacer que se cumplan sus reglas, reglamentos y órdenes, resoluciones y determinaciones."

Las disposiciones citadas demuestran que la Comisión es una agencia de la Rama Ejecutiva con poderes específicamente delegados que surgen de la Ley Núm. 45, *supra,* tales como ordenar la reinstalación de empleados a sus puestos con beneficios dejados de percibir. Es una agencia con poderes investigativos y *cuasi* adjudicativos. Estos poderes se ejercen por los Comisionados que por disposición de ley designan un panel de árbitros para resolver controversias sobre los convenios colectivos y cuando exista estancamiento en las negociaciones colectivas. Véase, 3 L.P.R.A. §1451(d) y (e).

El arbitraje laboral de la Ley Núm. 45, *supra,* distinto al arbitraje laboral que aplica a patronos y uniones regidas por la Ley Núm. 130, *supra,* o por la Ley Nacional de Relaciones del Trabajo, *supra,* no es voluntario. Es obligatorio por disposición de ley y las partes vienen obligadas a acogerse al servicio de arbitraje provisto por la Comisión. 3 L.P.R.A. § 1452. Diferente a las relaciones obrero-patronales privadas o de corporaciones

públicas, las partes en controversia bajo la Ley Núm. 45 no pueden acudir a arbitraje privado o al que provee el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos (Negociado).

La naturaleza de la unidad de mediación y arbitraje de la Comisión es diferente a la del Negociado. [1] Los casos atendidos por el Negociado responden a un arbitraje, en el cual las partes, por acuerdo y voluntariamente, optan por someter sus controversias laborales a sus árbitros, pero también pueden optar por adquirir servicios de árbitros privados.

Por el contrario, los árbitros de la Comisión, por delegación de la Comisión, ejercen el poder *cuasi* judicial delegado por la legislatura a la Comisión. La naturaleza de los laudos que emite la Comisión sobre convenios negociados bajo la Ley Núm. 45 es diferente a la de los laudos laborales privados. Constituyen decisiones finales de una agencia administrativa a la cual se le delegó una función *cuasi* judicial con la autoridad para conceder remedios y órdenes necesarias para el cumplimiento de los propósitos de la ley, tal como la reinstalación de un empleado público destituido de su empleo.

Resulta pertinente mencionar que a los empleados públicos, distinto a los empleados de entidades privadas, les asisten derechos constitucionales, uno de los cuales es el derecho a un debido proceso de ley que opera en dos dimensiones: la procesal y la sustantiva. La vertiente sustantiva persigue proteger y salvaguardar los derechos fundamentales de la persona y la procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo, como lo es la retención de un empleo público de carrera, se haga a través de un procedimiento que sea justo y equitativo.

El derecho a un debido proceso de ley procesal requiere la notificación de cargos al afectado con una descripción de la prueba en su contra y la celebración de una vista informal previa al despido para que el empleado exprese su versión de lo sucedido. *U. Ind. Emp. A.E.P. v. A.E.P.,* 146 D.P.R. 611 (1998).

El arbitraje de la Comisión, constituye el foro de los empleados públicos sindicados de agencias de la Rama Ejecutiva para casos disciplinarios, destituciones y para todo asunto o controversia sobre derechos concedidos por la Ley de Recursos Humanos del Servicio Público, Ley Núm. 184 de agosto de 2004, 3 L.P.R.A. § 1461, *et seq*, o por cualquier otra ley especial que les conceda derechos.

La Ley Núm. 130, *supra*, y la Ley Taft-Hartley, *supra,* no reglamentan el arbitraje obrero-patronal; guardan completo silencio sobre el arbitraje, pues éste se concibe como algo totalmente voluntario. El arbitraje es el *quid pro quo* del derecho a la huelga.

En Puerto Rico no hay legislación específica que regule el arbitraje laboral y la Ley Núm. 376 del 8 de mayo de 1951, 32 L.P.R.A. §§ 3201-3229, que reglamenta el arbitraje comercial no aplica al arbitraje entre patronos y empleados. *J.R.T. v. Otis Elevador, Co.,* 105 D.P.R. 195, 202 (1976).

En el caso *U.I.L. de Ponce v. Destilería Serrallés,* 116 D.P.R. 348 (1985), el Tribunal Supremo, ante la ausencia de un procedimiento a seguir en casos que llegaban a los tribunales para revisar laudos de arbitraje que surgían como resultado de comités de quejas y agravios que nacían voluntariamente de convenios colectivos entre las partes, hizo las siguientes expresiones pertinentes a la controversia que nos ocupa. En primer lugar, reconoció que el procedimiento de quejas y agravios se establecía por convenio y que existía una laguna en cuanto a si la acción en el tribunal debía ser un juicio plenario o un recurso de revisión. Sobre este punto expresa el tribunal que "...[E]n ausencia de acción legislativa a esos efectos nos vemos obligados a pautar el procedimiento a seguirse...[N]os inclinamos hacia el trámite referente a un recurso de revisión."

Luego de resolver que los laudos se atenderían como revisiones administrativas, el tribunal concluyó que el procedimiento a seguirse ante el foro judicial sería uno similar al utilizado cuando el tribunal, actuando como

foro apelativo, revisa la corrección o incorrección de la sentencia emitida por un tribunal inferior o la decisión de un organismo administrativo. "Resolvemos, en su consecuencia, que a partir de la fecha de la presente decisión, la parte que interese impugnar un laudo de arbitraje emitido en un caso obrero-patronal ya sea por las causas de nulidad tradicionalmente reconocidas o porque el mismo, de ser ello requerido, no ha sido resuelto conforme a derecho-, vendrá obligada por las disposiciones pertinentes y aplicables de las antes mencionadas reglas que rigen los recursos para la revisión de las decisiones administrativas ante el Tribunal Superior." *U.I.L. de Ponce v. Destilería Serrallés, supra*, pág. 356.

A la fecha de la decisión de *U.I.L. de Ponce v. Destilería Serrallés,* el foro apelativo de las decisiones administrativas lo era el Tribunal de Primera Instancia. En *Corp. Créd. Des. Com. Agrícola v. U.G.T.,* 138 D.P. R. 490 (1995), el Tribunal resolvió que el tribunal competente para atender el recurso de revisión de un laudo de arbitraje era la Sala Superior del Tribunal de Primera Instancia. Ahora bien, resulta sumamente pertinente a la controversia que atendemos el fundamento del tribunal para llegar a esta decisión. Expuso el Tribunal Supremo:

"De las disposiciones antes citadas, surge con meridiana claridad que la intención del legislador fue excluir al Negociado de las agencias reglamentadas por la ley, siendo éste un organismo al cual las partes acuden voluntariamente para dilucidar una disputa obrero-patronal. Al integrar lo antes expuesto con las disposiciones de la Ley de la Judicatura de Puerto Rico de 1994 y del Reglamento del Tribunal Supremo, forzoso es concluir que el Negociado no es una "agencia administrativa" de las que cualifican para que sus dictámenes sean revisados por este Foro mediante recurso apelativo. Aun cuando jurisprudencialmente se haya establecido para la revisión de un laudo un procedimiento análogo al de revisión de dictámenes administrativos, ello no convierte al Negociado en una agencia administrativa a los efectos de que sus decisiones deban ser apeladas ante este Foro. Cabe señalar, además, que ni la ley orgánica que creó el Negociado ni en *U.I.L. de Ponce v. Dest. Serrallés, Inc., supra,* se estableció la Sala Superior como el foro exclusivo para atender los recursos de revisión de impugnación de laudos de arbitraje." (Énfasis nuestro).

Las disposiciones específicas de una ley deben ser interpretadas conforme con la intención legislativa y la política pública que la inspira. Las leyes se deben interpretar y aplicar de acuerdo al interés social y el fin esencial del mismo a la luz de las situaciones de hechos que tiene el tribunal ante sí. La interpretación de un estatuto debe observar y acatar el propósito perseguido·en la implementación de la ley. Por esta razón, el Tribunal Supremo ha expresado que las diferentes secciones de un estatuto deberán interpretarse en conjunto, de manera armoniosa, mas no aisladamente para evitar resultados desatinados, confusos y absurdos. *Caribe Comms. v. P.R.T.C.O., supra.*

La Ley Núm. 45, *supra,* desde su aprobación en el 1998, requiere que todo convenio entre el representante exclusivo y la agencia incluya procedimientos para solución de quejas y agravios, incluyendo el arbitraje que pueda surgir durante la vigencia de un convenio. Además, requiere que las controversias sobre la aplicación e interpretación de sus cláusulas y toda controversia surgida al amparo de un convenio colectivo negociado entre las partes, sea dirimida a través de los mecanismos pactados en el convenio colectivo para el ajuste de quejas y agravios. 3 L.P.R.A. § 1452. Como el arbitraje es obligatorio, las partes no tienen la opción de acudir al foro judicial u a otro foro administrativo si así lo desean.

La Ley también dispone que los procedimientos de la Comisión se regirían "... según los términos que disponen las secs. 2101 *et seq...*" de la Ley Núm. 170 del 12 de agosto de 1988, 3 L.P.R.A. § 2101 *et seq.* En cuanto a revisión judicial, se dispuso en la Sección 9.3(j) el procedimiento para solicitar revisión judicial en los casos de prácticas ilícitas, 3 L.P.R.A. § 1452c(j), mientras, la sección 10.1 concede jurisdicción a este tribunal para entender discrecionalmente en los recursos de revisión de órdenes y resoluciones finales de la CRTSP. 3 L.P.R.A § 1452d. Al Tribunal de Primera Instancia le concede jurisdicción para poner en vigor órdenes y resoluciones finales de la Comisión una vez revisadas por el Tribunal de Circuito de Apelaciones, actualmente Tribunal de Apelaciones. 3 L.P.R.A. § 1452e. Véase, *Pérez v. Com. Rel. Trab. Serv. Púb.,* 158 D.P.R. 180

(2002).

Además, la ley concede jurisdicción al Tribunal de Apelaciones cuando se impugnen los laudos de arbitraje por estancamiento en las negociaciones. 3 L.P.R.A. § 1451p(g).

En *Rivera v. Dir. Adm. Trib.,* 114 D.P.R. 808 (1998), el Tribunal Supremo expresó que en:

"...vista de que la Ley de Personal para la Rama Judicial ni los reglamentos aplicables establecen un procedimiento de revisión judicial de decisiones como la que tenemos hoy ante nuestra consideración, resolvemos, como en situaciones análogas pasadas, que aun cuando la Rama Judicial no es una agencia administrativa y, en consecuencia, sus decisiones no se rigen por la L.P.AU., la decisión de despedir a la empleada en el caso de autos es una similar a las decisiones cuasi judiciales que, en torno a empleados, se toman a diario en las agencias administrativas del País. Así, conforme a la norma jurisprudencial prevaleciente, lo más sensato y procedente resulta ser que en casos como el de autos se rijan por un procedimiento similar a la revisión judicial de determinaciones administrativas... Procederá, por lo tanto, que en esta clase de situaciones las partes acudan al Tribunal de Circuito de Apelaciones a ser considerado discrecionalmente...".

Nótese que la sección 10.1 de la Ley Núm. 45, que no ha sido enmendada, recoge igual concepto de revisión judicial.

La Comisión sustituyó, como el foro administrativo para dirimir controversias que surjan de las leyes de personal que regían y rigen el servicio público, a la Junta de Administración de Sistema de Personal, hoy conocida en virtud de la nueva ley de personal, como Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH). Al aprobarse la Ley Núm. 45 en el 1998, la CASARH compartía jurisdicción con la Comisión en controversias sobre la anterior ley de personal. Pero, el 7 de agosto de 2001, la Ley Núm. 96 enmendó la Ley Núm. 45 para que CASARH retuviera jurisdicción en controversias de personal sólo en los casos de empleados no sindicados.  En consecuencia, al presente la Comisión tiene jurisdicción tácita sobre asuntos de personal y expresa sobre conflictos de interpretación de convenio de *todo empleado sindicado* al amparo de la Ley Núm. 45. *Pérez v. Com. Rel. Trab. Serv. Púb., supra.* Le corresponde a la Comisión, por conducto de los árbitros designados, interpretar y armonizar la Ley Núm. 184, *supra,* que rige el personal del servicio público con los convenios colectivos que hayan firmado las agencias y sindicatos.

Los árbitros de la Comisión que atienden las querellas de empleados sindicados son los mismos árbitros que atienden el Arbitraje Compulsorio, definido en la ley como el procedimiento mediante el cual las partes, luego de agotar el procedimiento de conciliación establecido en la ley, vienen obligados a someter la controversia sobre la negociación de un convenio colectivo ante la consideración de un árbitro designado por la Comisión. 3 L.P.R.A. § 1451p.

Hemos visto que la Comisión es una agencia administrativa con poderes definidos. Los laudos que emiten los árbitros, en quienes la Comisión por disposición de ley delega la función de adjudicar controversias que nacen de los convenios colectivos, son decisiones administrativas finales revisables ante este foro aun cuando no les apliquen los términos de la Ley Núm. 170, *supra,* en vista de que la Ley núm. 44 de 10 de enero de 2004 no excluyó a la Comisión de la definición de la agencia. Les corresponde a estos árbitros interpretar los convenios colectivos negociados, dentro de los parámetros establecidos en la Ley Núm. 45, y les corresponde resolver controversias, al igual que a la C.A.S.A.R.H., con relación a empleados no sindicados, levantadas por los empleados sindicados al amparo de la Ley Núm. 184, *supra,* que rige las normas básicas del personal gubernamental.

Un laudo de arbitraje al amparo de la Ley Núm. 45 constituye una decisión final de la agencia administrativa que es la Comisión. La revisión judicial de las determinaciones administrativas no puede

depender del nombre con el cual se cataloguen éstas, sino de que las mismas representen la posición final de la agencia tras la culminación del trámite administrativo disponible. *Olivo v. Srio. de Hacienda,* 164 D.P.R. 165 (2005).

## III

En este caso, el DTOP es una agencia de gobierno cubierta por la Ley Núm. 45 del 25 de febrero de 1998, según enmendada, que solicita revisión de un laudo de arbitraje. El DTOP acudió al Tribunal de Primera Instancia, el que analizó el laudo partiendo del estándar de revisión de las agencias administrativas. **[2]**

A la luz del análisis realizado, concluimos que no erró el foro primario al analizar los hechos presentados en el recurso conforme al estándar de revisión de decisiones administrativa. Asimismo, concluimos que la decisión del árbitro se sostiene por la prueba en el expediente. Veamos.

Toda determinación administrativa está cobijada por una presunción de regularidad y corrección. Tal y como lo ha interpretado el Tribunal Supremo de Puerto Rico en numerosas ocasiones, la revisión judicial de este tipo de decisiones se circunscribe a determinar si la actuación de la agencia es arbitraria, ilegal, o tan irrazonable que la misma constituye un abuso de discreción. *Otero v. Toyota,* 163 D.P.R. 716 (2005); *Pacheco v. Estancias de Yauco,* 160 D.P.R. 409 (2003); *E.L.A. et als. v. Malavé,* 157 D.P.R. 586 (2002); *Mun. de San Juan v. J.C.A.,* 149 D.P.R. 263 (1999); *Franco v. Depto de Educación,* 148 D.P.R. 703 (1999). La presunción de corrección que acarrea una decisión administrativa, deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *E.L.A. v. P.M.C.,* 163 D.P.R. 478 (2004); *A.R.P.E. v. Junta de Apelaciones Sobre Construcciones y Lotificaciones,* 124 D.P.R. 858 (1989); *Henríquez v. Consejo de Educación Superior,* 120 D. P.R. 194 (1989); *Murphy Bernabe v. Tribunal Superior,* 103 D.P.R. 692 (1975). Ello, debido a que los tribunales deben dar deferencia a las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de éstas. *Rivera Concepción v. A.R.P.E.,* 152 D.P.R. 116 (2000); *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.,* 133 D.P.R. 521 (1993); *Asoc. Drs. Med. Cui. Salud v. Morales,* 132 D.P.R. 567 (1993).

Al enfrentarse a una petición para revisar judicialmente una determinación administrativa, el tribunal analizará si conforme al expediente administrativo: 1) el remedio concedido fue razonable; 2) las determinaciones de hechos están razonablemente sostenidas por la prueba; y 3) las conclusiones de derecho del organismo administrativo son correctas. *P.R.T.C.O. v. J. Reg. Tel. de P.R.,* 151 D.P.R. 269 (2000); *Mun. de San Juan v. J.C.A.,* 149 D.P.R. 263 (1999); *Misión Ind. P.R. v. J.P. y A.A.A.,* 142 D.P.R. 656 (1997). Véase, Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* 2da. Ed., Bogotá, Forum, 2001, págs. 533-536.

En cuanto a la revisión de las determinaciones de hechos de la agencia, la facultad revisora del foro judicial está limitada por la sección 4.5 de la L.P.A.U., 3 L.P.R.A. § 2175. Dicha sección, establece que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo." Véase, *Rebollo v. Yiyi Motors,* 161 D.P.R. 69 (2004); *Asoc. Vec. H. San Jorge v. U. Med. Corp.,* 150 D.P.R. 70 (2000); *Domínguez v. Caguas Expressway Motors, Inc.,* 148 D.P.R. 387 (1999). El expediente administrativo constituirá la base exclusiva para la decisión de la agencia y para la revisión judicial de ésta. *Comisionado v. Prime Life,* 162 D.P.R. 334 (2004); *Torres v. Junta Ingenieros,* 161 D.P.R. 696 (2004).

Las partes concurren en que el derecho aplicable establece que para determinar si alguna conducta realizada por algún empleado constituye un acto de insubordinación, deben de concurrir una serie de requisitos, a saber: **[3]**

"1) El proceder a desobedecer la orden debe de ser con conocimiento, disposición y deliberación. La mera

negligencia no constituye insubordinación.

2) La orden debe ser tanto explícita como clara, de manera que el empleado entienda su significado y que la misma es una orden.

3) La orden debe de ser razonable y relacionada con el trabajo.

4) La orden debe ser efectuada por alguien que tenga autoridad. El empleado debe conocer que esa persona posee la autoridad.

5) El empleado debe estar consciente de las consecuencias que conllevaría el no efectuar la orden impartida.

6) El empleado debe tener tiempo suficiente para corregir su conducta."

La controversia ante la consideración de la Comisión se reducía a determinar si la imposición de la sanción por parte del DTOP cumplía con el criterio de justa causa y si la sanción guardaba proporción con la falta alegada. La sanción que se cuestionó en el proceso de arbitraje se impuso por actos de insubordinación alegadamente cometidos por la recurrida. El peso de la prueba de establecer que la sanción fue impuesta por justa causa recaía sobre el DTOP.

Luego de celebrar una vista, en la que recibió el testimonio de la recurrida y de su supervisora, y luego que las partes presentaran sus respectivos alegatos, el árbitro determinó que el DTOP no probó que la recurrida hubiese actuado con disposición y deliberación, ni mucho menos que la recurrida se hubiese resistido a desobedecer una directriz. El árbitro determinó que del testimonio de la recurrida y de la amonestación escrita presentada en evidencia se desprende que las órdenes en controversia fueron dadas a través de compañeros de trabajo de la recurrida. El árbitro determinó, además, que la recurrida sólo le reconoce autoridad a la supervisora y no así a sus compañeros que le dieron las órdenes. Véase págs. 13-14 del laudo.

A raíz de lo anterior, el árbitro concluyó que no todos los elementos que deben considerarse a la hora de determinar si existe una actitud insubordinada están presentes en el caso de marras, por lo que determinó que no existe prueba suficiente para establecer que la recurrida demostró una actitud de insubordinación. Véase pág. 14 del laudo.

El DTOP no cumplió con el peso de la prueba de establecer que existía justa causa para la sanción impuesta. La determinación del árbitro descansa en la credibilidad asignada por éste a los testimonios de la recurrida, su supervisora y los documentos presentados ante su consideración.

En ausencia de que la determinación recurrida sea irrazonable, no procede sustituir el criterio de la agencia. *Hatillo Cash & Carry v. ARPE*, Opinión de 27 de mayo de 2008, **2008 J.T.S. 117**; *Torres Acosta v. Junta Examinadora de Ingenieros*, 161 D.P.R. 696, 707 (2004); *Rebollo v. Yiyi Motors*, 161 D.P.R. 69 (2004). Cabe recordar que aun cuando exista más de una interpretación razonable de los hechos, los tribunales deberán sostener la decisión de la agencia y no sustituirán su criterio por el de la agencia. *Asoc. Vecinos v. U. Med. Corp.*, 150 D.P.R. 70 (2000).

A la luz de lo anterior, expedimos el auto de *certiorari* solicitado y confirmamos la sentencia recurrida.

**IV**
Por los fundamentos antes discutidos, se expide el auto de *certiorari* solicitado y se confirma la sentencia recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

## ESCOLIOS 2009 DTA 81

**1.** El Negociado de Conciliación y Arbitraje es un programa del Departamento del Trabajo y Recursos Humanos (DTRH) que ofrece servicios de conciliación, mediación y arbitraje a uniones y a patronos privados y entidades gubernamentales que funcionan como empresas privadas. Su función es intervenir y mediar en disputas, conflictos o controversias industriales y agrícolas, o de cualquier otra naturaleza, relacionados con la aplicación de las leyes del trabajo, que ocurran entre trabajadores y patronos a fin de preservar la paz industrial. 3 L.P.R.A. § 320. El Negociado presta servicios de arbitraje en virtud a acuerdos voluntarios entre las partes y no en virtud a una delegación de poder *cuasi* judicial. Por el contrario, la Administración de Derecho al Trabajo, que es un componente del DTRH, atiende las reclamaciones del Seguro por Desempleo y lleva a cabo funciones *cuasi* judiciales mediante vistas celebradas por árbitros que son revisadas como decisiones administrativas. 29 L.P.R.A. § 706.

**2.** La Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. §2101 *et seq.,* dispone que la revisión de las resoluciones finales dictadas por las agencias administrativas se hará ante el Tribunal de Apelaciones. No obstante, por ser nuestro sistema judicial uno unificado, el foro de instancia tenía jurisdicción para atenderlo.

**3.** *Just Cause, The Seven Tests,* Koven, Chapter 2, Second Edition, 1991, págs. 156-157.